UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY JANINE TOUSIGNANT,

    Plaintiff,

vs.

ST. CLAIR COUNTY and
St. Clair County SHERIFF DEPUTY
KYLE N. KAUFMAN, in his individual and
official capacity,

    Defendants.
_____/

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

Now comes Plaintiff, KIMBERLY JANINE TOUSIGNANT, through counsel, and for her complaint against the above named Defendants states as follows:

## JURISDICTION AND VENUE

1.    That this action arises under the United States Constitution and under the laws of the United States, particular under the Civil Rights Act, Title 42 of the United States Code, §§ 1983 and 1988 and the United States Constitution, Amendments 4, 5 and 14.

2.    That this Court has jurisdiction of this cause under the provisions of 42 USC § 1983 and 28 USC § 1331.

1

3. That venue is proper in the Eastern District of Michigan pursuant to 28 USC § 1391.

## PARTIES

4. That Defendant ST. CLAIR COUNTY is a governmental body duly organized in carrying out governmental functions in the State of Michigan within the Eastern District of Michigan, including operating a Sheriff's Department, which, at all relevant times, employed Defendant, KYLE N. KAUFMAN.

5. That Defendant KYLE N. KAUFMAN is sued in his individual and official capacities and is a citizen of the State of Michigan and was acting under color of law and within the scope of his employment as a St. Clair County Sheriff's Deputy at all relevant times.

6. That Plaintiff KIMBERLY JANINE TOUSIGNANT is a resident of the State of Michigan, residing within the Eastern District of Michigan.

7. That Defendant, ST. CLAIR COUNTY, is responsible for, and does in fact hire, train, supervise and instruct its Sheriff's Deputies in the performance of their duties.

## **COMMON ALLEGATIONS**

8. That in December, 2020, Plaintiff was, to her understanding, in an exclusive dating relationship with a person named Richard Seim ("Seim").

9. That on December 4, 2020, Plaintiff and Seim had numerous communications, including text message communications and telephone calls, including a 52 minute telephone call that started after 11:00 p.m.

10. That on December 5, 2020, Plaintiff had additional text message and telephone communications with Seim.

11. That Seim advised Plaintiff on December 5, 2020 that he was going to be "checking out" for the day as he would be cleaning his condo.

12. That Seim also advised Plaintiff on December 5, 2020 that she was free to come by his home if she so desired.

13. That on the evening of December 5, 2020, the Plaintiff, accompanied by Haileigh Pallett, went to the home of Seim on Aberdeen Street.

14. That on the evening of December 5, 2020, Plaintiff discovered that Seim was apparently cheating on her as he was in the midst of a romantic evening with another woman when Plaintiff stopped by his home with Ms. Pallett.

15. That a tumultuous scene ensued at Seim's home, after Plaintiff arrived and found him with another woman.

16. That Seim is a large man, standing 6' 4" and weighing at least 280 lbs. On the other hand, Plaintiff is a small woman, being 5' 2" and weighing no more than 125 lbs.

17. That after Plaintiff arrived at Seim's home on the evening of December 5 and the tumultuous scene ensued, Seim assaulted Plaintiff on multiple occasions, including on his back deck (where she was grabbed by the neck) and in his garage where she was violently flung off a set of stairs and then grabbed again by the neck.

18. That after Ms. Pallett observed Seim violently fling Plaintiff off the stairs in the garage, she called 911 to report the incident.

19. That the 911 operator instructed Ms. Pallett and Plaintiff to stay in a safe place in their vehicle while the police were being dispatched.

20. That Defendant Kaufman arrived on the scene after having been dispatched to the location.

21. That after arriving on the scene, Defendant Kaufman went into the home of Seim and spoke at length with Seim.

22. That in Seim's home, Defendant Kaufman also spoke to the other woman, namely Brenda Kaufman.

4

23.     That after exiting the home of Seim, Defendant Kaufman promptly arrested Plaintiff, after speaking to her very briefly (less than one minute).

24.     That after arresting Plaintiff, Defendant Kaufman briefly spoke with Ms. Pallett and Plaintiff's son (who had arrived on the scene).

25.     That after being placed in the back of the police car by Defendant Kaufman, Defendant Kaufman proceeded to threaten Plaintiff, telling her that he had the power to charge her with multiple felonies and, in essence, ruin her life.

26.     That despite the fact that the squad car was equipped with a recording system, Defendant Kaufman did not record the interaction with Plaintiff.

27.     That after bringing Plaintiff to the Sheriff's Department, Defendant Kaufman brought Plaintiff into an interrogation room alone and threatened her again.  Despite the fact that recording equipment was available, Defendant Kaufman did not record the interaction at the Sheriff's Department.

28.     That sometime after arresting the Plaintiff, Defendant Kaufman prepared a police report, with the intention of submitting it to the Assistant Prosecuting Attorney's Office for the issuance of an arrest warrant.

29. That the report prepared by Kaufman intentionally or recklessly included numerous false statements, including statements falsely indicating that Plaintiff had confessed or admitted to numerous crimes, including breaking and entering, domestic violence, and interfering with a 911 call (by physically taking a cell phone from Seim and tossing it to Ms. Pallett).

30. That, in fact, Plaintiff did not make any inculpatory statements to Kaufman, but nevertheless Kaufman wrote a report wherein he falsely claimed that Plaintiff, among other things, admitted coming to Seim's home and entering it without an invitation or permission (breaking and entering), committing an assault against Seim, and physically taking a cell phone from Seim while he was placing an emergency call and tossing it to Haileigh Pallett (thus interfering with an emergency police call).

31. That Defendant Kaufman's report also made false statements regarding what Ms. Pallett allegedly stated to him, including falsely claiming that Ms. Pallett witnessed Plaintiff physically removing the cell phone from Seim, tossing it to her, with her powering off the cell phone before returning it to Seim.

32. That Ms. Pallett has indicated under oath in state court litigation that the statements attributed to her by Defendant Kaufman in the police report were false and that she never made such statements.

33. That the police report prepared by Defendant Kaufman also falsely indicated that Hoffman told him that she witnessed Plaintiff hitting Seim when, in fact, Hoffman testified in the state court litigation that she never saw any such occurrence.

34. That Defendant Kaufman prepared the police report with the fabricated statements, knowing that it would be relied upon by Assistant Prosecuting Attorney in deciding whether to issue a warrant.

35. That although St. Clair County has written forms to be used for witness statements and/or confessions of suspects, Defendant Kaufman did not utilize any such forms and did not obtain any written statements from any of the witnesses.

36. That in the related state court litigation, Defendant Kaufman stated that he was not sure if he made any notes of his discussions with people at the scene, but if he did, he subsequently burned them.

37. That the police report prepared by Defendant Kaufman, which included fabricated statements attributed to Plaintiff, Ms. Pallett, and Ms. Hoffman, was relied upon by the Assistant Prosecuting Attorney issuing charges, including felony charges, against Plaintiff on December 7, 2020.

38. That the false statements, particularly the fabrication of Plaintiff's admission to the crimes was relied upon by the Assistant Prosecuting Attorney in issuing the warrant on December 7, 2020.

39. That as a result of Defendant Kaufman's misconduct and the fabricated police report, Plaintiff was charged with breaking and entering, domestic violence, and interfering with an emergency call. After months of litigation, all charges were dismissed or dropped.

## COUNT I – VIOLATION OF 42 USC § 1983

40. Plaintiff incorporates by reference as though fully set forth herein each of the foregoing paragraphs of this Complaint.

41. That pursuant to 42 USC § 1983, every person who, "under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit and equity or other proper proceedings for redress."

42. That, in essence, 42 USC § 1983 provides an avenue for a person to sue a person who, acting under color of state law, violates one's Constitutional rights.

43. That the 4th Amendment to the United States Constitution protects a person from unreasonable searches and seizures, including unreasonable arrests without probable cause.

44. That the 5th Amendment to the United States Constitution provides, in pertinent part, that no person "shall be . . . deprived of life, liberty or property, without due process of law . . .".

45. That the 14th Amendment to the United States Constitution provides, in pertinent part, that no state shall "deprive any person of life, liberty, or property, without due process of law."

46. That Defendant Kaufman violated clearly established Constitutional or statutory rights of which a reasonable person would have known.

47. That well before the events of question, it was well established that a person's Constitutional rights are violated when evidence is knowingly fabricated and a reasonable likelihood exists that such false evidence would have effected a prosecutorial decision.

48. That well before the events in question in this case, it was well established that a 4th Amendment claim for fabrication of evidence lies where a defendant knowingly manufactures probable cause, thereby effecting a seizure.

49. That in the 6th Circuit, it has been clearly established that a criminal defendant's right to be free from prosecution based on fabricated evidence existed at least as early as 1992. See, e.g., <u>Gregory</u> v <u>City of Louisville</u>, 444 F.3d. 725, 744 n. 8 (6th Cir., 2006).

50. That, similarly, it has been well established in the law prior to the events in question in this case that a 4th Amendment malicious prosecution claim exists where an officer, acting under color of state law, engages in deliberate or reckless falsehoods.

51. That the failure to include exculpatory evidence (as required by the 5th Amendment) and the inclusion of intentionally or reckless false information in the report demonstrates that Defendant Kaufman's knowing or intentional behavior that was designed to violate Plaintiff's Constitutional rights protected by the 4th, 5th and 14th Amendments to the United States Constitution.

52. That as a direct and proximate result of Defendant Kaufman's violations of Plaintiff's Constitutionally protected rights, Plaintiff was wrongfully arrested and prosecuted.

53. That the Plaintiff was not convicted of any of the charges instigated against her by Defendant Kaufman, but rather such charges were either dismissed by the court via *nolle prosequi*.

54. That as a direct and proximate result of Defendant Kaufman's violation of Plaintiff's Constitutional rights, Plaintiff suffered damages, including costs associated with defending herself, shock, humiliation, mental and emotional trauma, and other damages, past, present and future.

55. That, additionally, Defendant Kaufman's actions were undertaken with intentional or reckless disregard of Plaintiff's Constitutionally protected rights, thus entitling Plaintiff to an award of punitive damages under 42 USC § 1983.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter a judgment in her favor against Defendant Kaufman in whatever amount is determined to constitute full, fair and just compensation, together with a separate award of punitive damages, in addition to costs, interest and attorney fees as permitted by court rules or statutes, including 42 USC § 1988.

## COUNT II – *MONELL* LIABILITY FOR FAILURE TO TRAIN, SUPERVISE OR DISCIPLINE (DEFENDANT ST. CLAIR COUNTY)

56. Plaintiff incorporates by reference as though fully set forth herein each of the foregoing paragraphs of this Complaint.

57. That Defendant Kaufman was acting under color of law during all actions giving rise to this Complaint.

58. That pursuant to 42 USC § 1983, as well as the 4th, 5th, and 14th Amendments to the United States Constitution, Defendant St. Clair County owed Plaintiff certain duties to properly supervise, monitor, and train its officers.

59. That Defendant St. Clair County breached these duties via its absence of policies, procedures, regulations, customs and/or lack of and/or inadequate training and thus encouraged, tolerated, or ratified its officers to act with deliberate indifference towards the Constitutional rights of its citizens.

60. That Defendant Kaufman testified in state court proceedings that the policies of St. Clair County allowed him discretion as to whether to turn on recording devices, including recording devices in police vehicles.

61. That it is the custom or policy of St. Clair County to allow officers to not maintain their notes of interviews, to turn off or disable recording devices when interviewing suspects or witnesses, to not utilize written witness/suspect statement forms, and to otherwise engage in conduct that allows officers free reign to fabricate and/or slant evidence in any manner that the officer desires.

62. That the official or unofficial policies of Defendant St. Clair County (or the lack of appropriate policies), resulted in Defendant Kaufman

12

having free reign to fabricate or falsify charges against the Plaintiff. Moreover, Defendant Kaufman was not investigated or disciplined for such conduct, thus ratifying such conduct.

63. That as a direct and proximate result of the policies (or lack of policies) of Defendant St. Clair County, Plaintiff's Constitutional rights have been violated by Defendant Kaufman and Plaintiff has suffered damages as previously set forth.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter a judgment against Defendant St. Clair County in whatever amount is found to constitute full, fair and just compensation.

Respectfully submitted,

/s/Michael S. Cafferty
MICHAEL S. CAFFERTY P36613
Attorney for Plaintiff
333 West Fort St Ste 1400
Detroit, MI 48226
313-628-4717
mcaffe@aol.com

DATED:  December 4, 2023

## **DEMAND FOR TRIAL BY JURY**

Now comes the Plaintiff, KIMBERLY JANINE TOUSIGNANT, by and through her counsel, and demands trial by jury.

        Respectfully submitted,

        /s/Michael S. Cafferty
        MICHAEL S. CAFFERTY P36613
        Attorney for Plaintiff
        333 West Fort St Ste 1400
        Detroit, MI 48226
        313-628-4717
        mcaffe@aol.com

DATED:  December 4, 2023